IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO.: 1:22-CR-163 |
| ) | |
| Plaintiff, ) | JUDGE PAMELA A. BARKER |
| ) | |
| v. ) | |
| ) | |
| LUIS HERNANDEZ SOCARRAS, and ) | UNITED STATES' SENTENCING |
| JORGE HERNANDEZ SOCARRAS, ) | MEMORANDUM AND MOTION FOR |
| ) | UPWARD VARIANCE |
| Defendants. ) | |

Now comes the United States of America, by its counsel, Michelle M. Baeppler, First Assistant United States Attorney, and Payum Doroodian, Assistant United States Attorney, and respectfully submits this memorandum for the sentencing of Defendants Luis Hernandez Socarras and Jorge Hernandez Socarras.[1] Consistent with the plea agreements, the United States stipulates and agrees that the total offense level after acceptance of responsibility is 17 and both Defendants are Criminal History Category I.[2] (R. 55, 57: Plea Agreements, PageID 325, 339). This puts both Defendants at guidelines sentence of 24 to 30 months custody for Counts 1-3, plus

---

[1] Because the United States holds both Defendants equally culpable and similarly situated, it will argue that both defendants should receive the same sentence that amounts to an upward variance.

[2] The United States concedes that it erred in not including the +2 enhancement for 10 or more victims in accordance with U.S.S.G. §2B1.1(b)(2)(A)(i).  Immediately after sending the plea agreements to defense counsel, the United States informed defense counsel of the error but stated that it would honor the plea agreement as written with this error. As to the total loss calculation of $360,937.44, the parties negotiated this amount for the purposes only of the guidelines calculation and the United States stands by that calculation. However, pursuant to the plea agreements, both parties are free to argue for any sentence it deems appropriate. (*See* R 55, 57, PageID 325, 339). The United States previously informed both defense counsel that it intended to argue for an upward variance in this case.

an additional consecutive 24 months custody term for Count 4 (Aggravated Identity Theft). For reasons set forth below, the United States moves for an upward variance to 48 months custody for Counts 1-3, plus an additional consecutive 24 months custody term for Count 4 (Aggravated Identity Theft).

I.  **FACTUAL BACKGROUND**

*"My life has been turned upside down at my age of 85, soon to be 86 in August. My doctors ha[d] told me that the stressful situation, that the harassment, that me and family have endured has affected my health. I am recovering from by-pass heart surgery and several minor heart attacks. I sincerely hope these individuals are sent to prison for a long time."*

- Victim C.W. (*See* PSR, PageID 486)

Identity theft is one of the few crimes that can substantially affect so many people across vast distances in a short period of time. The victims of the scheme in this case, approximately 2,366 in total, all had their AT&T mobile accounts compromised and charges made for new devices in amounts that each ranged between $359.99 to $1,899.99 per transaction. Many victims had multiple fraudulent transactions made to a single account. In total, this scheme resulted in a loss of approximately $2,155,483.78. These victims will spend years trying to correct the damage done to their lives.[3]

The Defendants in this case are identical twin brothers who participated in a nationwide scheme to fraudulently gain access to AT&T mobile accounts in order to enrich themselves and others. To do so, a member of the conspiracy called customers posing as AT&T customer service and asked account holders to verify their accounts. After obtaining their account information and user passcodes, the Defendants and others added themselves as authorized users to the

---

[3] As a result of the COVID-19 pandemic and other issues, the FBI was not able to notify victims until after the charges in this case were filed on April 11, 2022. This likely affected the number of victim impact statements before the court.

2

accounts, which enabled them to make changes to the accounts and charge the accounts for new devices. With this apparent authority, the Defendants and others traveled across the country and charge high-end Apple products, like iPhones, iPads, and Apple Watches, to these accounts. These products were subsequently re-sold at a substantial discount in Defendants' hometown of Miami, Florida. Evidence showed that the Defendants themselves were added to 382 accounts and directly and jointly made fraudulent charges in the amount of $360,937.44. Electronic evidence also showed that the Defendants rented trucks and made trips across the country, stopping at Best Buy, Walmart, and Sam's Club stores in 26 states in order to obtain these products fraudulently and evade police detection. Figure 1 below shows cell site data in 2019 from the Defendants' phones during their cross-country trips to commit their crimes. Each red dot in the figure below depicts a phone ping.



Figure 1: Cell Site Data from Luis and Jorge Socarras in 2019.

The Defendants direct involvement in this scheme began around February 6, 2018, and continued through February 19, 2020. During that those twenty-four months, Defendants, posing as authorized account holders, initiated fraudulent transactions at hundreds of stores across the country. This conduct persisted even after an arrest on October 1, 2019, in West Palm Beach, Florida, at a Sam's Club while Defendants attempted to purchase iPhones within the store. Jorge Socarras was detained by officers and had in his possession numerous credit cards in other persons' names and false identification. Security cameras showed Luis Socarras was also present at the store, but evaded law enforcement and was not detained. After this arrest, however, the Defendants continued the scheme and made more fraudulent purchases in numerous states.

On January 26, 2020, the Defendants were observed at multiple Best Buy stores in the Northern District of Ohio making fraudulent purchases for iPhones and iPads that were charged to numerous AT&T accounts. In one store in Mayfield Heights, Ohio, officers approached Luis Socarras after he attempted to make multiple purchases using an AT&T account where he was listed as an authorized user. Officers asked Luis Socarras how he knew the AT&T account holder, and he replied that it was his uncle's wife. Luis Socarras denied that he was at another store in the area making similar purchases, but surveillance video showed Luis Socarras at a Parma, Ohio, Best Buy earlier that day where he purchased several iPhones. Officers subsequently arrested Luis Socarras on fraud charges. Investigators also examined surveillance from a Best Buy in North Olmstead, Ohio, from that day, and they identified Jorge Socarras making similar purchases. Later that day, Jorge Socarras appeared to post bond for his brother in Mayfield Heights, Ohio, and the two apparently left the district.

Two days later, officers obtained a search warrant for Luis Socarras' vehicle that was left at the Best Buy in Mayfield Heights, Ohio. A search of this vehicle revealed 29 Apple iPhones 11 Pro Max cell phones, 6 Apple iPad Pro tablets, 3 Apple watches, a Taurus G2C 9mm pistol

4

with loaded magazines, other electronic devices, and Luis Socarras' passport. All Apple devices found were later discovered by AT&T fraud investigators to be fraudulently purchased as a part of this scheme. In addition, officers found receipts for multiple Apple devices in the vehicle. These receipts substantiated that fraudulent purchases of the items occurred in Arizona, Missouri, and Ohio just days prior. The total value of all fraudulently purchased items found in the vehicle was approximately $80,000. (*See* Figure 2 below).



Figure 2: Items seized from Luis Socarras' truck in Mayfield Heights, Ohio, on January 26, 2020.

## II. APPLICATION OF § 3553(a) FACTORS

Considering the 18 U.S.C. § 3553(a) factors, including the nature and circumstances of the offense, the recommended sentence of a total of 72 months is sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate general and specific deterrence.

The Defendants in this case, although young with good upbringings and limited criminal histories, somehow managed to involve themselves in a nationwide scheme to defraud thousands of people out of millions of dollars. Without any regard for the countless lives that they callously destroyed financially, the Defendants travelled around the country posing as authorized AT&T account holders and fraudulently purchased expensive Apple products that they resold at a substantial discount in Miami, Florida. Without any showing of remorse and even after they were arrested twice, these Defendants brazenly persisted along their scheme until a federal complaint was filed in February 2020 and the country shut down due to the COVID-19 pandemic. Thus, given that nature and circumstances of the offense, specifically the breath of loss and multitude of victims, the Defendants each deserve a significant prison sentence for their inexplicable multi-year crime spree that negatively affected so many lives.

An upward variance also serves to adequately reflect the seriousness of the Defendants' crimes, promote respect for the law, provide just punishment, and deter them and others from engaging in this conduct in the future. The Federal Trade Commission reports that in 2021 alone, there were 5,737,265 reports of fraud in the United States, with an alarming 1,434,676 reported cases of identity theft, *(See* 2021 FTC Consumer Sentinel Network Data, dated February 2022, https://www.ftc.gov/system/files/ftc_gov/pdf/CSN%20Annual%20Data%20Book%202021%20Final%20PDF.pdf). This amounts to an incredible 70% increase year over year, amounting to more than $5,893,260,382 in total loss in 2021 alone. (*Id.*).  And this is not a problem that is

6

going away any time soon. The relative ease that the Defendants and others can steal identities or fraudulently obtain account information is alarming. These criminals often sit in the comforts of their own homes and can steal thousands of accounts and identities with a few clicks of a keyboard. In contrast to this relative ease, millions of victims painfully suffer for sometimes years attempting to repair and correct the damage caused by such criminals. Accordingly, the Defendants' sentence must reflect how serious and dangerous their offenses are and deter them and others from engaging in that conduct. Thus, a severe sentence is warranted to protect the public from criminals who may falsely believe that for crimes of this nature, the risk is worth the reward. The message from this Court's sentence should be emphatically the opposite; if you commit these crimes, you will pay dearly.

### III. CONCLUSION

For the forgoing reasons, the United States respectfully requests that the Court should impose a sentence on each Defendant for 48 months custody for Counts 1-3, consecutive to 24 months custody for Count 4. In addition, this Court should order restitution as it deems appropriate, joint and several between both Defendants.

Respectfully submitted,

MICHELLE M. BAEPPLER
First Assistant United States Attorney


By:   /s/ Payum Doroodian
Payum Doroodian (DC: 1035376)
Assistant United States Attorney
United States Court House
801 W Superior Ave, Suite 400
Cleveland, OH 44113
(216) 622-3739
(216) 522-2403 (facsimile)
Payum.Doroodian@usdoj.gov